And I hope I didn't do too much violence to your client's name. No, Your Honor, it's fine. Thank you. Excuse me. May it please the Court. My name is Timothy Wickmer and I represent the petitioners Walled and Gina Agha. We would respectfully ask the Court to vacate the decision of the Board of Immigration Appeals that denied asylum, withholding, and Convention Against Torture relief, and to remand the case to the BIA with instructions to consider political asylum in the exercise of discretion, or, at the very least, for further proceedings in accordance with your instructions and the applicable law. In the final alternative, we would ask that the Court grant Mr. Agha withholding of removal or relief under the Torture Convention. There were three very serious errors in the underlying case, part of it arising out of a very sort of bizarre procedural history. But in short, the fundamental and foundational principle of asylum is that the petitioner prove that he's a refugee. In order to do that, the first thing that has to be done is that the agency has to determine his nationality, or if he does not have a nationality, his country of last habitual residence. This determination was never done by either immigration judge, there were two, or by the BIA in either of the times it was before it. So four cracks at it, and it was never really effectively done. Now, where do you, where would we go to find authority that that finding must be specifically made? There is persuasive authority from the Second Circuit, two cases. One is DOMO versus BIA, it's 416 F. 3rd, 172, and that's at 174 to 75, that's a Second Circuit case from 2005. But, and another... It seems to me this is all statutory. And so if that's a requirement, I would think, it would seem to me that you should be able to go to a statute, one of the statutes, one of the provisions, and find the requirement if it's there. And as I've looked at the statutes that's been cited, I don't see that it's, that that is a requirement. Can you enlighten me? Yes, Your Honor, there is a statute. The statute is the definition of refugee at 8 U.S.C. 1101A. 42A. And it begins, any person who is outside any country of such person's nationality, or in the case of a person having no nationality, is outside any country in which such person last habitually resided, etc., etc. That's the leading element to the definition of refugee. Political asylum is granted to a person who can prove that they are a refugee under that statute. These two Sixth Circuit cases, DOMO and also Wong Chook versus DHS 448 F 3rd 524, those cases elaborate that requirement from that statutory provision. The government, and indeed the agency fact finders, if you will, throughout have relied upon a different statute, which is merely the administrative designation of a country of removal once a removal order is entered. It is separate and distinct from the definition of a determination of nationality or last habitual residence. In fact, DOMO says, the determination of an alien's nationality or lack thereof is a threshold inquiry in determining the alien's eligibility for asylum. And the court said that this is different from and for the purposes of eligibility for asylum. It's irrelevant to the country of removal designation. And the further quote, the BIA's failure to address the alien's position or make a finding as to nationality was error. And it really is. What bothers me about the position that the petitioner takes here is that I'm concerned that here there was no argument about whether this individual could, the identity or the identification or specifically identifying a country of nationality or a country where this individual habitually resided. It seems to me that the whole, the argument was over whether one of these countries, any of these countries that were possibilities were in a situation that this petitioner could not go there because of a reasonable belief that persecution would take place or because of a history of persecution. So I guess what I'm saying, I'm concerned that it seems a little unfair that here after the fact that this would become an issue because it didn't seem to be an issue that was really in dispute or litigated before the immigration judge. With all due respect, your honor, I would conclude just, I would maintain just the opposite and here's why. And I'm glad to have the opportunity to explain it. Initially on the notice to appear, he was charged with being an Indian citizen. We objected to that. During the course of the proceedings below, the first immigration judge stated that he was considering India and Lebanon. Okay, he never considered the UAE. In fact, both the petitioner who was deemed credible and the petitioner's expert witness who was deemed credible both tried to testify as to well-founded fear of persecution in the UAE. The immigration judge specifically cut off that inquiry, page 250 to 251 of the transcript. He specifically cut off the inquiry with regard to the expert witness at page 228. The government itself objected to any evidence as to UAE in its conduct of the case. The judge sustained it. We objected. Then the BIA sends the case back down for merely an amended order because they were unsatisfied with the country's designated for removal. At the remaining hearing, which is very limited, the government now contends that the judge named UAE as last habitual residence. It doesn't really say that in the order. It doesn't say the specific words. But if the government points to page 85 of the transcript, which they do, where in her preparatory language she talks about UAE being the country of last habitual residence, what happened was at that time I specifically maintained our objection. I said to the judge, just to maintain our position for the record, I would object to all of those designations and ask your guidance. We're obviously maintaining our claim in all of the objections to not granting asylum and related relief. I guess what I would ask is that is it your understanding that this will not require a new appeal and it will just simply go back to the board? In other words, it was certified. It wasn't an appeal. Or do I have to file another appeal to protect this? And the judge says, I don't believe that you will need to file another appeal. The remand specifically was for me to complete the record, if you will, for appeal. So they're going to note the designation issue. Then later on she says, the issue would not be deemed waived if for some reason the board later determines, which they did, that you had to file a separate notice of appeal for this issue. I specifically maintained that. We specifically tried to get evidence for UAE. And this really is the second error in the case, Your Honor, is that far from giving us an unfair advantage, it's actually quite a burden. In a limited asylum case, normally these things aren't an issue because everybody knows so-and-so is from Zimbabwe, so-and-so is from Canada, whatever. In our case, because Mr. Agha was stateless and of Palestinian origin, it really was an issue. The country where he lived the longest was on a temporary work visa for his father in the UAE. The one country that the immigration judge specifically disallowed evidence to be taken. When the case was remanded to the second immigration judge, it was only to amend the order. So she analyzes it, says UAE, I maintain an objection. When the case went back up, we filed another brief where we specifically maintained all of our claims to asylum from UAE. Even in the limited record, both the petitioner and the expert witness testified to a history involving his family, his father with a business dealing with a ruling family. There was bad blood with it. There were threats. The other business partner was the head of the secret police of the UAE. There was already at least significant evidence taken about danger in the UAE. In a sense, now the government in its own brief, before your honor today, let me find the case citation, in their brief on page 23, they're saying now, this is the government saying this, only the UAE is the appropriate country. The UAE is clearly the country of last habitual residence. They say the judge found that in the second individual hearing, which of course she did as a country of removal but didn't really designate nationally. But even if they're right, I clearly maintain my objection to it. So now what they're saying is our position at the first hearing was the UAE is the wrong country. You can't provide any evidence. Now we say, of course the UAE is the only country. And because we're past the hearing, we're not going to let you provide any evidence anyway. There is no way that due process can be satisfied, that the record can support removal to the UAE, without an evidentiary hearing where the parties are allowed to provide evidence with regard to the UAE. Well, is there an issue or is there a problem with this proffered information or testimony or evidence about the United Arab Emirate and this family, this history of family problems with the authorities? Because that would not appear to fall within one of the bases for persecution that the statute talks about. To be fair, without being allowed to fully develop evidence on that, this court can't know. The BIA never really analyzed it because our evidence was literally cut short by the judge and objected to by the government. But even assuming that it is, a party can prove a well-founded fear either by past persecution, maybe this is, maybe it isn't, the BIA had a very cursory analysis of UAE, it's like one sentence. Very cursory of the expert, one sentence. But apart from that, because of the history of the family there, there is an opportunity if we're given a fair hearing, and I think even based on the limited record, to show that he has a well-founded fear of future persecution on account of his political opinion or social group. Refugee Palestinian in the UAE, no rights. Dispute with the royal house, chief of police. These are all things that at least, your honor, I would contend could conceivably be asylum. We haven't been given the opportunity at any stage to present a full record on the UAE. And now, of course, we have a fundamental problem. Our expert was found to be credible, and he testified at length about his knowledge of Middle Eastern affairs, including the UAE and the UAE royal house. But he is since deceased, it's going to be difficult to call him at a remanded hearing, so we'll have to go out and get another expert witness, which we're willing to do. I'm into my rebuttal time, which I'd like to reserve, but just one note on due process before I sit down. Essentially, if your honors conclude that the UAE was the appropriate designation, and really that's the only thing with any chance of being arguably designated, then it stands to reason that in order to prove an asylum case, we have to have a hearing and present evidence that's heard by the court and considered. No discussion by the first immigration judge, only India and Lebanon were discussed briefly in his argument, or in his decision, which was issued two months later on the telephone. It appeared that he had lost some grasp of the facts adduced at the trial, and then the BIA, of course, has not addressed it at all. Thank you. Mr. O'Connell, good morning. Good morning, your honors. May I please the court? Joseph O'Connell on behalf of the respondent, Eric Holder. First, Mr. Agha has failed to exhaust his argument that the agency didn't adequately address the issue of nationality or Mr. Agha's last habitual residence. And accordingly, that issue is not before the court because he didn't raise any of these claims to the board in his administrative appeal. Now, putting aside the issue of exhaustion for a moment, the board did address his asylum claim with regard to the UAE specifically. The board specifically addressed his claims with regard to the UAE, and it said his father, it recounted his claims and it held that Mr. Agha has never been detained, interrogated, persecuted in any way, so there's no past persecution and there's no future persecution. So, essentially, Mr. Agha is... Saying that there'd be no further evidence available to be submitted on remand? Presumably, he could submit more evidence. I don't know what he would submit. Essentially, he would like to submit more evidence, but... Apparently, he tried to submit some at the first hearing, and he was cut off cold by the IAJ. That's correct, but then it went back to the board. It went to the board, and then the board remanded it for countries of designation and any other issues that may arise therefrom. That was the last sentence in the board decision. Nothing further before the second IAJ? The IAJ had a hearing, and he discussed basically where Mr. Agha had lived previously and which countries would be proper for his removal, and the UAE was one of those countries. It went to the board again on appeal, and Mr. Agha didn't raise any of these claims to the board in his administrative appeal brief. In other words, he didn't claim that he was cut off by the immigration judge in his brief to the board. Accordingly, the board didn't address these claims in his decision, but the board did address the fact that his asylum claim related to the UAE in that the board addressed the UAE claims and held that there was no persecution in the past and there was no persecution in the future. Accordingly, the board's decision incorporated that last habitual analysis in its decision already, so there's no reason to remand the case here. Again, there's no evidence in this case compelling the conclusion that Mr. Agha is eligible for asylum. His asylum claim was limited to basically his own affidavit and a poli-sci professor's testimony regarding country conditions in various countries of removal, but again, the immigration judge even gave him an even more generous standard than the last habitual residence. The immigration judge held that there was no reliable evidence that he would be persecuted in any of these countries of removal, including the UAE, and the board held that. Again, there's no real reason to remand this case for additional evidence. Especially in light of the fact that Mr. Agha did not exhaust these claims to the board in his administrative appeal brief. So Mr. Agha can't essentially fault the board for it. In other words, it has been determined by someone that there's no place in the world where he will be persecuted? That's correct, Your Honor. The board held that. The order amending the immigration judge's order designating a country of removal makes reference to a hearing that the IJ says was held that day. That's correct, Your Honor. And a couple of sentences later it says, the parties agreed that no additional testimony should or would be taken concerning the respondents' underlying asylum and protection claims. I believe that's correct, Your Honor. We go to the transcript of that proceeding, we're going to find a stipulation stated in so many words? Mr. Wickmer was present at the hearing. I wasn't present there. But I believe that's correct. I can't give you a pinpoint site on that. But I believe that's correct and it hasn't been challenged to the board. So you say when it went back, the petitioner here had the opportunity to put in whatever he wanted to put into the record on these issues and declined to do so? Mr. Wickmer said that, I believe he said previously that he renewed his objections generally. But I mean, I don't know if he actually requested to produce additional evidence or if they agreed upon it. I can't say from the record on that. But again, Mr. Aga never advanced these claims to the board in his administrative appeal brief. In his appeal brief, he argued that the record compelled the conclusion that he was eligible for asylum. But he didn't claim that he was precluded from presenting testimony before the IJ. And it should go back for a finding on nationality or last habitual residence. Didn't the BIA limit the second immigration to determine only the appropriate countries of removal? It said countries of removal in the very last sentence there. It said any other issues that may arise resulting from these determinations. Which you read to mean that he was not foreclosed from raising the EU? I would read that to say that, yes. And then you have to look at that in light of the fact. How did the IJ read it? The IJ addressed the designated countries of removal. Essentially, the IJ was looking at the statute 8 U.S.C. 1231, where he basically looked at all the countries where Mr. Aga resided and what connections he had to those countries. And then he basically issued the removal order to those various countries. Again, I don't know if there was an agreement made between the parties saying that their testimony would be limited and they wouldn't proffer any additional asylum evidence. But again, during his appeal brief, he didn't raise these arguments. So the board didn't address them. But in any event, the board did address his UAE asylum claim in his decision. It noted that Mr. Aga's father had dealings with a sheik in the UAE, but it held that there was no past persecution in that country and that there was no evidence that he would be persecuted in any country. So there was no well-founded fear of future persecution. And accordingly, the evidence does not compel a contrary conclusion. Now, unless the Court has any other questions. So under that analysis, any remand would be futile. Of course. Yes. Very well. All right. Thank you, Your Honor. You may proceed. Thank you, Your Honor. Is the government's recitation of the history correct, the procedural history and the factual history? No, Your Honor. And you asked the relevant question, I believe, because you asked how did the immigration judge consider the remand. This any other factors thing is very nebulous. It was specifically talking about in the first BIA decision the fact that the countries of removal designation was improperly done. The IJ on page 21 of the transcript said, I'll just enter an order amending the prior immigration judge's order. Then after. Were you there? I was there. I was there. And that's why, Your Honor, when she designated UAE, I mentioned that we maintained our objections to UAE and all of our positions on asylum. And the reason for that is this. In our asylum application, in our hearing before the first immigration judge, in our first appeal, and in our second appeal, we argued that he should be granted political asylum from the UAE. There was no need. This is enough of a recitation of rights. I specifically asked if I needed to file another appeal. She said, you do not need to file another appeal. It's already perfected. I asked on page 24 if she wanted more documentation. Do you wish the documentation that was part of a previous exhibit on Palestinian documentation? She said, no, if it's all part of the record, don't worry about it. So it was before them. My argument for asylum from the UAE was before them. And the government's a bit disingenuous when it says the BIA addressed it. Well, of course they did. They addressed the very truncated record that the first immigration judge cut off. We had country reports about the UAE. We had a very distinguished expert that the government accepted as an expert, found credible, the petitioner's own testimony credible. There's evidence there. The BIA mentioned it, but the BIA did not mention, oh, by the way, the IJ who said I'm not even going to consider the UAE, the government said you can't be removed to UAE. Now you don't have enough on the UAE. It's a fundamental violation of due process of law. There's clearly harm here. We were prevented from providing evidence. So is the statement, the sentence in the order amending the IJ's order, is that simply incorrect where the IJ says the parties agreed that no additional testimony should or would be taken concerning the respondent's underlying asylum and protection claims? If it's understood in a particular way, it was agreed because we agreed that the scope of the remand was that she was to amend the order, and since we maintained our asylum claim to UAE, there was no need for any further evidence to that on that day, because all she was going to do that day was make a country of designation for removal, a country of removal designation. There was no call for further testimony. The hearing did not last very long. It wasn't designed to. It was also done by television, not in person, which it can be, but the first hearing was done in person and things like that. The government wants to call what we received a generous standard. May I finish that? Yes, you may. So to finish it succinctly, this generous standard says you can go out and try to prove asylum from any country in the world except the one where we're eventually going to tell you that you can be removed to. Then later, after we change our mind, we're going to falter for not having provided this focus and succinct evidence on UAE. It just boggles the mind. In what manner did you specifically preserve your objection to the first IJ's limitation of your evidence regarding the UAE? It's a good question, Your Honor, and since the record's like a thousand pages, it's in there. I did object. He cut me off at two different places, and the government, I think it's at least capable of possibly being considered that the government conceded that he can't be removed to the UAE. They conceded it at the first trial. They cut off our evidence by saying you don't need it. They said no chance he can be removed to UAE, and I urge the court to examine the record at that point. I believe it's at 228 or 250 or one of those two places. Thank you very much for your consideration. We thank both sides for the arguments in your briefs. The case is submitted. We will take it under consideration.